```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

MICHAEL GERA                       :
                                   :   No. 3:12-CV-1227
     Plaintiff,                    :
                                   :
     v.                            :   Judge Richard P. Conaboy
                                   :
COUNTY OF SCHUYLKILL               :
                                   :
     Defendant.                    :
_____

## Memorandum

We consider here a Motion for Summary Judgment (Doc. 62) filed by Defendant County of Schuylkill. That motion has been fully briefed by the parties (Docs. 63, 70, and 72) and is now ripe for our consideration.

**I.   Background:** [1]

Plaintiff Michael Gera worked as a corrections officer at the Schuylkill County Prison from June of 1986 through February of 2008. (Doc. 64, ¶1; Doc. 70 at 1-2). In the period from March 2, 2007 through February 26, 2008 Plaintiff was assigned to a temporary light duty position working exclusively in the control room. (Doc. 64, ¶ 6; Doc. 69, ¶ 6). Plaintiff's assignment in the control room in 2007-08 was a result of physical limitations following a knee surgery. (Doc. 64, ¶ 5; Doc. 69, ¶ 5).

Prior to his light duty assignment in the control room,

---

[1] The factual recitation in this section is derived from the Defendant's Statement of Material Facts (Doc. 64) and the Plaintiff's Response (Doc. 69) as well as portions of the Plaintiff's deposition. (Doc. 70-2).

1

Plaintiff's primary duties as a corrections officer were multi-faceted and involved the custody and control of inmates. (Doc. 64, ¶ 2; Doc. 69, ¶ 2). This "custody and control" aspect of the corrections officer's essential duties included, inter alia, the ability to "assist in averting fights, riots, or escapes; assisting in physically suppressing aggressive acts undertaken by prisoners, in accordance with established policy." (Doc. 64, ¶ 2; Doc. 69, ¶ 2).[2] Plaintiff acknowledged at his deposition that he has not been physically capable of carrying out the "custody and control" aspect of the corrections officer position at any time since February of 2008. (Doc. 70-2 at 68-71). Plaintiff has also acknowledged that the control room position was always a temporary position, but that after the County of Schuylkill entered a new collective bargaining agreement with the prison employees in January of 2008 additional restrictions were placed on the control room position. (Id. At 72). Those additional restrictions required that the control room position was a temporary assignment which could last no more than one year and that it was available only to those recovering from work-related injuries. (Id.). Plaintiff has not claimed that his incapacitation was a result of a work-related injury. (Doc. 70-2 at 14-15).

Pursuant to the aforementioned collective bargaining

---

[2] The language quoted in the preceding sentence is taken verbatim from the Schuylkill County Prison's job description for the corrections officer position. Plaintiff Gera acknowledged the accuracy of the job description (Doc. 70-2 at 69).

2

agreement, Plaintiff met with Prison Warden Gene Berdanier and a union representative on February 26, 2008 (Doc. 64, ¶ 13; Doc. 69, ¶ 13).  Due to the new restrictions on the control room position imposed by the new collective bargaining agreement and the unavailability of any other position at the prison, Warden Berdanier informed Plaintiff that his only alternative was to place Plaintiff on medical leave.  (Doc. 64, ¶ 15; Doc. 69, ¶ 15).  On March 5, 2008, Plaintiff grieved the decision to place him on medical leave and requested a "reasonable accommodation for my employment by assigning me to work in the control room."  (Doc. 64, ¶ 16; Doc. 69, ¶ 16).  On March 6, 2008, Warden Berdanier denied the grievance.  (Doc. 64, ¶ 17; Doc. 69, ¶ 17).  The grievance was then taken to a second step involving a meeting among Plaintiff, Warden Berdanier, and Schuylkill County Human Relations Director Thomas White.  (Doc. 70-2 at 75-76).  At the conclusion of that meeting, Thomas White informed Plaintiff that "he wasn't going to do anything with it [the grievance]" and that Plaintiff could take it up with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") if he thought that he was the victim of discrimination.  (Doc. 70-2 at 76). Plaintiff then filed charges with the PHRC that were ultimately referred to the EEOC. (Doc. 70-2 at 77).

During the pendency of the EEOC action, Plaintiff's medical condition deteriorated resulting in a further limitation of his

3

mobility that required four separate surgeries. (Doc. 64, ¶ 21; Doc. 69, ¶ 21). In March of 2009 Plaintiff filed an application for Social Security Disability Benefits that alleged he had become totally disabled effective February 26, 2008, the date he last worked at the Schuylkill County Prison. (Doc. 64, ¶22; Doc. 69, ¶ 22). By decision dated August 19, 2010, Plaintiff was awarded, retroactive to February 26, 2008, Social Security Disability Benefits by virtue of a finding that Plaintiff had severe impairments that rendered him totally disabled pursuant to the criteria of the Social Security Act. (Doc 64, ¶ 26; Doc. 69, ¶ 26). The disability determination by the Social Security Administration ("SSA") stated, in pertinent part: "The medical evidence makes clear that the claimant has gross anatomical deformity in his knees which causes current joint pain and stiffness with signs of limitation of motion or other abnormal motion in the claimant's knees.... The impairment of the claimant's knees resulted in inability to ambulate effectively." (Id.) As of January 8, 2014, Plaintiff was still receiving Social Security Disability Benefits ("SSDI") incident to the award of August 19, 2010. (Doc. 70-2 at 15). Plaintiff also acknowledged at his deposition taken January 8, 2014 that he has not sought employment of any type since the date the SSA deemed him disabled. (Doc. 70-2 at 65).

    The EEOC ultimately issued Plaintiff a right-to-sue letter on

May 31, 2012 after conciliation efforts before that agency had proven unsuccessful.  Shortly thereafter, Plaintiff filed the complaint that initiated this action, one alleging that the Defendant discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 120/et seq.

**II.   Summary Judgment Standard**:

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary. Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the record. *Celotex, supra* at 322-23. This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). Therefore, if, after making all

6

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex, supra*, at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See *Lexington Ins. Co. V. W. Pa. Hosp.,* 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

### III. Legal Discussion:

Defendant raised numerous arguments in support of its Motion for Summary Judgment. The Court will consolidate several of these arguments as inevitably overlapping and will consider them in turn.

**A.  Defendant's Contention That Plaintiff Is Not A Qualified Individual With A Disability.**

In order to present a prima facie case of disability discrimination under the ADA, a Plaintiff must demonstrate that he: "(1) has a disability; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) was nonetheless terminated or prevented from performing the job."  Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d. Cir. 1998); citing Shiring v. Runyon, 90 F.3d 827, 831 (3d. Cir. 1996).  The determination whether an individual with a disability is "qualified" in the context of the above-referenced Gaul criteria is a two-step process: "To satisfy this requirement, a plaintiff must first demonstrate that he 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires.' Second, a plaintiff must establish that he, 'with or without reasonable accommodation, can perform the essential functions of the position held or sought.'" Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d. Cir 2001)(citing Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d. Cir. 1998).  See also 42 U.S.C.A. § 12111(8).

In the instant case, Plaintiff's grievance following his lay-off by prison officials sought permanent placement in the temporary control room position he had held from February of 2007 through

February of 2008.³  (Doc. 70-4 at 31).  The pivotal question this Court must resolve is whether the Defendant actually had such a position or whether the control room duty was (except in the exceptional situation wherein an employee was in light duty status preparatory to resuming full employment activity) merely one aspect of the essential duties of a corrections officer.

The record that the parties have developed clearly establishes that the corrections officer position entailed seven essential duties, one of which involved the custody and control of inmates.⁴ The fundamental nature of the "custody and control" duty to work as a corrections officer has been recognized by federal courts outside the Third Circuit and this Court must agree with their assessment. See e.g., Hoskins v. Oakland County Sheriff's Department, 227 F.3d. 719 (Sixth Circuit 2000)(restraining inmates was essential function of position and reassignment of officer to position normally performed by others on a rotating basis was not a reasonable

---

³ Plaintiff also stated at his deposition that he "asked for anything available in the county." (Doc. 70-2 at 71-72).  He has not produced, however, any documentation that he applied for any other county position nor has he demonstrated that other county jobs that he could perform were vacant in the 52 months that elapsed between his lay-off and the filing of his complaint in this matter.  It was Plaintiff's burden to demonstrate that the County of Schuylkill had other vacant and funded positions whose essential duties he was capable of performing.  Shiring v. Runyon, supra at 832.  The record is devoid of any evidence of this type and Plaintiff has failed to carry his burden in this regard.

⁴ The Court recognizes that an employer's mere characterization of a duty as essential is not dispositive and is but one thing to be considered in making a decision regarding the essential elements of a position.  See 29 C.F.R. § 1630.2(n)(3).  The Court must also note, however, that it is hard to imagine any more fundamental duty of a corrections officer than the custody and control of inmates.

accommodation under the ADA); Miller v. Illinois Department of Corrections, 107 F3d. 483 (Seventh Circuit 1997)(corrections officer who could no longer perform essential functions such as escorting inmates and being on call to respond to emergencies such as riots and escapes was not a qualified person under the ADA); and Pickering v. City of Atlanta, 75 F.Supp 2d. 1374(N.D.Georgia 1999)(inmate supervision is regarded as an essential function of corrections officer position in the context of the ADA). Significantly, Plaintiff could not perform this "custody and control" function at any time subsequent to February 26, 2008, his last day on the job at Schuylkill County Prison, and has admitted this very fact at his deposition. (Doc. 70-2 at 68-71). This admission establishes that Plaintiff was not a "qualified" person with a disability, as defined in Skerski supra, because he could not perform all the essential duties of a corrections officer, the position he had held before the onset of his disability and sought pursuant to his grievance. Moreover, the accommodation Plaintiff sought - - to be permanently placed in a temporary light-duty position - - was one the Defendant was not legally required to accept.

The fact that the Defendant had temporarily accommodated Plaintiff by confining his duties to the control room did not require the Defendant to permanently maintain that position as a reasonable accommodation because employers are not required to

10

create positions specifically for handicapped employees or transform temporary light duty positions into permanent ones. Shiring v. Runyon, supra at 831. [5]  See also Buskirk v. Apollo Metals, 307 F.3d 160, 169 (3d. Cir. 2002). Plaintiff's request for a full-time position in the control room may not accurately be characterized as a request to fill an available position.  Rather, it was actually a request that the employer create for him an alternative position that had never existed.  In essence, Plaintiff's request was that he be exempted from performing an essential duty of the corrections officer position.  The ADA does not require an employer to go that far.  Donahue v. Consolidated Rail Corporation, 224 F.3d 226, 232 (3d. Cir. 2000).  Consequently, Defendant has established that Plaintiff has not been a "qualified individual" under the ADA on or after February 26, 2008, the date he was laid-off by Defendant.[6]

   **B.  Defendant's Contention That Plaintiff's Receipt of Social Security Disability Benefits Operates to Bar His ADA Claim.**

There is a seeming tension between Plaintiff's receipt of SSDI and his assertion that he can perform the job of a corrections

---

[5] Shiring was a case under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  However, that statute and the ADA use the same substantive standards for determining liability for disability discrimination.  See Fowler v. UPMC Shadyside, 578 F.3d 203-208 (3d. Cir. 2009).

[6] February 26, 2008 is a critical date because the determination of whether an individual with a disability is qualified is made at the time of the employment decision.  Gaul, supra at 580.

11

officer with appropriate accommodation.  The legal precursor to receipt of SSDI is a finding that the claimant is incapable of performing any employment that exists in the national economy.  See 42 U.S.C. § 423.  Yet, an ADA claimant must demonstrate that he is capable of performing an existing job "with or without reasonable accommodation."  See 42 U.S.C. § 12111(8).  The Supreme Court has held that "...since the Social Security Administration does not take into account the possibility of 'reasonable accommodation' in determining SSDI eligibility, an ADA Plaintiff's claim that she can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that she could not perform her own job (or other jobs) without it.  An individual might qualify for SSDI under SSA's administrative rules and yet, due to special individualized circumstances, be capable of performing the essential functions of her job.... <u>An ADA Plaintiff's sworn assertion in an application for disability benefits that she is unable to work appears to negate the essential element of her ADA claim that she can perform the essential functions of her job, and a court should require an explanation of this apparent inconsistency.</u>"  Cleveland v. Policy Management Systems Corporation, 526 U.S. 795, 796(1999). (emphasis supplied).

Unfortunately for Plaintiff, his "explanation of this apparent inconsistency" is confined to a faulty premise that this Court has already rejected - - the notion that he can perform the essential

functions of a corrections officer with reasonable accommodation. The Court has already explained above why Plaintiff's proposed accommodation - - exclusive assignment in the control room - - would not be tantamount to his performance of all the essential functions of his job because it exempts Plaintiff from the critical "custody and control" responsibility inherent in the corrections officer position.  Because Plaintiff offers no further explanation of why his ADA claim is not inconsistent with his assertion to the SSA that he cannot perform any work in the national economy, the Court must conclude that his ADA claim must fail as inconsistent with his continued receipt of SSDI.

### C. **Defendant's Argument Regarding Plaintiff's Retaliation Claim.**

Plaintiff's retaliation claim stems from Paragraph 38 of his Complaint that contends he was discharged by Defendant "because he engaged in a protected activity by requesting a reasonable accommodation."  Defendant states correctly that a valid retaliation claim in this context must demonstrate three things: (1) protected activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  Krouse v. American Sterilizer Company, 126 F.3d 494-500 (3d. Cir. 1997).  There is no dispute here that Plaintiff's request for accommodation was

13

protected activity nor that Defendant discharged Plaintiff after he engaged in protected activity.  Still, Plaintiff must also demonstrate a causal connection between the protected activity and the adverse action.  Such a causal connection may be demonstrated either through temporal proximity or ongoing antagonism.  Krouse, supra at 503-04.  However, when a Plaintiff relies upon temporal proximity without more, "...the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred."  Shellenberger v. Summit Bank Corp., Inc. 318 F.3d 183, 189 n.9 (quoting Krouse at 503).

   The record before this Court includes no evidence of antagonism, ongoing or otherwise, directed against the Plaintiff.  Quite to the contrary, the record establishes that Defendant accommodated Plaintiff by exclusively assigning him to the control room for a full year and afterward continued to carry him as its employee for an additional 40 months before his discharge.  (Doc. 64, ¶ 33; Doc. 69, ¶ 33).  Plaintiff was discharged only after being notified in January of 2011 that the prison was short of staff, needed an additional corrections officer, and once again offered Plaintiff this position. (Doc. 62, ¶¶ 31-32; Doc. 69, ¶¶ 31-32).  The Defendant's actions with regard to Plaintiff Gera are facially reasonable and he has not offered any evidence or documentation that his employer or any of his superiors were antagonistic toward him.

14

Due to this complete lack of evidence of antagonism toward Plaintiff by Defendant, Plaintiff's claim of retaliation may be sustained only by showing that the temporal link between his grievance (March of 2008) and his discharge (January of 2011) was, in the context of Shellenberger and Krouse, supra, "unusually suggestive of retaliatory motive."  Inasmuch as our circuit court has held that even a two month lapse between protected activity and subsequent adverse action was not, in and of itself, close enough to constitute a causal link establishing retaliatory intent - - see Williams v. Philadelphia Housing Authority, 380 F.3d 751, 760 3d. Cir. 2004) - -, the nearly three year gap between Plaintiff's protected activity and his ultimate discharge cannot establish a causal link between them.  Accordingly, Plaintiff's retaliation claim must fail.

**IV.  Conclusion:**

For all the foregoing reasons, the Court finds that Plaintiff has failed to establish any material fact in dispute that could provoke a reasonable juror to conclude: (1) He is a qualified individual with a disability within the meaning of the ADA; or (2) He was retaliated against by his employer for engaging in activity protected by the ADA.  The Court finds also that Plaintiff's explanation as to why his receipt of SSDI does not preclude his ADA claim could not be credited by a reasonable juror.  Consequently, the Court concludes that Defendant's Motion for Summary Judgment

(Doc. 62) must be granted.  An Order consistent with this conclusion shall be filed contemporaneously herewith.

BY THE COURT

                                         <u>S/Richard P. Conaboy</u>
                                         Honorable Richard P. Conaboy
                                         United States District Court

Dated: November 21, 2014